## TITLE TO AND CONTROL OVER STREETS BY MUNICIPALITIES.

Common Pleas Court of Hamilton County.

THE CITY OF CINCINNATI, BY WALTER M. SCHOENLE, ITS CITY SOLICITOR, v. THE DIAMOND LIGHT COMPANY.

Decided, November 11, 1914.

*Electric Light Companies—Consent of Municipal Authorities to the Use of Streets and Alleys—Must be Exercised in a Reasonable and Not an Arbitrary Manner—Exclusive Rights and Monopoly in the Lighting Business Not Favored—Mandamus by a Company Denied Use of the Streets Lies, When.*

While express consent should be secured by an electric light company from the proper municipal authorities before undertaking to lay conduits or string wires in any of the public ways of a municipality, yet if council should unreasonably refuse to grant such permission to a company having permission so to do from the abutting land owners, mandamus or mandatory injunction will lie to require the granting of such consent, to a company duly authorized under the laws of the state, to lay such conduits under reasonable restrictions or in accordance with the provisions of an existing ordinance. *Henry* v. *Cincinnati*, 1 C.C.(N.S.), 289, followed in preference to *Butler* v. *Cincinnati*, 2 C.C.(N.S.), 376.

*Walter M. Schoenle* and *Saul Zielonka*, for plaintiff.
*M: Muller* and *Joseph W. O'Hara*, contra.

GORMAN, J.

On August 17, 1914, the city of Cincinnati, through Walter M. Schoenle, its solicitor, upon the direction of the city council filed a petition in the above entitled cause, alleging in substance that the defendant company, a corporation under the laws of Ohio, is engaged in the business of manufacturing and generating electricity and supplying the same for commercial purposes to consumers within the city of Cincinnati, and that without warrant or authority of law and without the consent of or permission from the city, and contrary to its ordinances, has constructed conduits and has laid wires under certain public highways of the city, to-wit, Walnut street, between Fifth and Sixth

streets, Vine street, between Fifth and Sixth streets, and Hatters alley, between Vine street and Lodge alley; and it further averred that said defendant is about to extend its conduits and wires under, along or over said streets and other streets and alleys, and is now supplying or about to supply thereby electricity for commercial purposes to consumers, and will do all of said things unless restrained by order of this court. Plaintiff prays that the defendant be perpetually enjoined from doing the things complained of until it shall secure the consent of the proper city authorities to lay and maintain said conduits and wires in the public ways of the city, and that it be ordered to remove those conduits and wires now laid without authority, and that a temporary restraining order issue pending the hearing of this cause, and for such other and further relief as it may be entitled to.

Summons was issued and the defendant brought into court.

On motion of the plaintiff the defendant, on August 26th, was temporarily restrained, until the further order of the court, from further laying any conduits or wires under or through any of the streets or alleys named in the petition and from using the conduits through Walnut street and Vine street and from transmitting electrical current through said conduits and wires in Vine and Walnut streets.

By amended petition plaintiff avers that the defendant has also laid or is about to lay conduits or wires in Fountain alley, between Fifth street and Sixth street, and prays that it may be enjoined as to this alley also, as well as to the other streets and alleys.

On October 13, 1914, an answer was filed by the defendant admitting most of the averments of the petition and amended petition. It denies that said conduits and wires were laid without authority of law or without the consent of the city authorities. By way of further answer to the plaintiff's amended petition it avers that said conduits and wires referred to in plaintiff's petition were installed by it and with the consent of the owners of the real estate abutting upon said streets and alleys where said conduits and wires are laid; that said conduits and wires are laid at a depth of not less than nineteen feet below the surface *across* said streets and alleys; that they do not interfere in any way with other conduits or wires or with any present use of said

streets by plaintiff, or with any use which plaintiff has a right to make thereof, and that they were laid without tearing up the surface of said streets or in any way interfering with the use thereof by the plaintiff or the public.

Defendant further avers that it is the owner of and has installed at large expense a modern plant for generating and distributing electricity and is now furnishing the same at reasonable rates and that it has complied with the laws of Ohio and the rules and regulations of the Public Utilities Commission of Ohio with reference to generating and distributing electricity.

Defendant further avers that under the authority granted plaintiff by the laws of Ohio to regulate the mode and manner of distributing electricity, the plaintiff, by its council, passed Ordinance No. 2585, April 21, 1911, which was duly approved by the mayor, and by the provisions of Section 647 thereof the business of furnishing and distributing electricity for illumination and power is regulated and provided for; that said ordinance is in full force and effect and that it has complied with all the provisions thereof in so far as the same affects its business and that by reason thereof the plaintiff has exhausted its power in the premises and has no legal authority to impose further conditions on its business.

Defendant further avers that on August ——, 1914, after the commencement of this action, it sought to procure from the council of the plaintiff the passage of an ordinance granting to it permission to install and maintain the conduits and wires under the alleys named in the petition; that the committee on light of said council refused to recommend and the council refused to pass said ordinance because plaintiff was then negotiating with the Union Gas & Electric Company and had under consideration a contract with said company for furnishing light and power to plaintiff and its citizens, and that final action on said ordinance it was recommended should be postponed until the final determination of this action by this court.

Defendant further avers that the request to bring this action was made by the Union Gas & Electric Company, an Ohio corporation, which has been furnishing electricity and power to the city of Cincinnati and its citizens for some time past and is now furnishing the same under an agreement for that purpose; and

that said, the Union Gas & Electric Company, is the real party in interest in this action.

Defendant further avers that the practically exclusive right now given to said Union Gas & Electric Company by plaintiff has resulted in the charging of unreasonable and unjustifiable rates therefor, and operates to the loss and damage of the plaintiff and its citizens in that behalf; that the sole purpose of the bringing and maintaining of this action is to prevent competition with said Union Gas & Electric Company and to prevent defendant company from furnishing electric light and power to consumers in said city at a much lower rate than that charged by the said the Union Gas & Electric Company.

Defendant further avers that said Union Gas & Electric Company has installed its conduits, poles and wires upon and below the streets of plaintiff under the ordinance, No. 2585, above referred to, without obtaining special permission from plaintiff or its officers, and that there has been no objection to or interference with the said company on account thereof by the plaintiff.

Defendant avers that by reason of the premises the plaintiff is estopped from asserting the claim set up in its petition and amended petition herein and is not entitled to the equitable relief therein demanded; and that it asks to be hence dismissed with its costs.

By reply plaintiff denies that this action was brought upon the written request of the Union Gas & Electric Company and denies that said company is the real party in interest herein; but avers that the action is brought at the direction of the city council of Cincinnati; and denies each and every allegation of the answer except that defendant sought to procure the passage of an ordinance through the city council granting it permission to lay its conduits and wires and that the light committee of the council and the council took the action alleged in the answer and for the reasons set out in the answer, which averments of the answer are admitted to be true.

The case came on to be heard before the court on its merits and on the above pleadings and the agreed statement of facts and was submitted to the court on oral arguments of counsel and briefs thereafter filed by counsel for the parties.

From the facts admitted in the pleadings and the agreed statement of facts submitted by counsel, it appears that the defendant company is duly incorporated under the laws of Ohio and authorized to manufacture, generate and furnish to consumers electricity; that it has laid its conduits and wires in the streets and alleys named in the pleadings without any special grant or permit from the city council; that it has received the consent of the abutting property owners to lay said conduits and wires, and that said conduits and wires do not interfere with the plaintiff's or the public's use of said streets and alleys and that they are laid about nineteen feet below the surface, and that they do not interfere with other conduits, wires or other underground utilities, and that the surface of the streets and alleys was not broken in laying said conduits and wires.

The sole question of law which the court believes it is called upon to determine in this case is—(a) whether or not the defendant may legally lay its conduits and wires in said streets and alleys without the special consent or permit of the city of Cincinnati first had, and upon the consent of the abutting property owners alone; (b) or, if this has not been granted, then has the defendant company the right to lay its conduits and wires without the special consent or permit of council, under the provisions of Section 647 of Ordinance 2585 of the city, and by virtue of the authority granted to it by the statutes of Ohio?

This court delayed the hearing of this action after the same was brought in order to enable the defendant to secure, if possible, from the city council its special consent or permit to lay its conduits and wires in said streets and alleys, upon the theory and belief that although no such consent or permit was granted before the laying of the conduits and wires, nevertheless, if consent was afterwards given it would in effect be an acquiescence on the part of the city and would be equivalent to consent given beforehand; and if such consent had been given by the council then this action would be dismissed as there could be no valid grounds upon which the injunction should be continued. But such consent, permit or grant having been delayed until after the final action by this court in this case, nothing remains for the court to do but to pass upon the merits of the controversies.

Under Chap. 2, Tit. IX, Div. II, Subdiv. II, of the General Code, Vol. 4, Sections 9170 to 9198, provision is made for telegraph, telephone and electric light companies to use and occupy the streets and highways of a municipality, county or state.

Under Section 9170 it is provided that a magnetic telegraph company may construct telegraph lines, from point to point, along and upon any public road by the erection of the necessary fixtures, including posts, piers and abutments necessary for the wires; but shall not incommode the public in the use thereof.

Section 9171, among other things, provides that no such company or companies and the owner or owners of the right-of-way shall contract for the exclusive use thereof for telegraphic purposes. These companies are given the right of eminent domain by the provisions of Section 9178. If the municipal authorities and the companies can not agree upon the mode of using the street, then the probate court of the county shall have jurisdiction to hear and determine the matter and to direct in what mode the telegraph line shall be constructed along such street, alley or public way, so as not to incommode the public.

By the provisions of Section 9192, all the provisions of this chapter relating to telegraph companies shall apply to electric light companies, except the provisions contained in Sections 9178 and 9179. Section 9178 confers jurisdiction on the probate court to fix the manner and mode of using the street when the municipal authorities and the company can not agree. Section 9179 prohibits the municipal corporation to demand or receive compensation for the use of a street, alley or public way beyond what may be necessary to restore the pavement to its former state of usefulness.

It would appear, therefore, that the Legislature has taken away from the probate court the power of determining the manner and mode of using the streets by an electric light company in cases where the company and municipal authorities can not agree, so that if there is no power to review the action of the municipal authorities in refusing to grant an electric light company the right to use the public streets and ways, for the installation of conduits and wires, then the action of the municipal authorities in refusing a permit to use the street is final and conclusive and the municipal authorities have the power to grant

an exclusive right to an electric light company to use the public ways for lighting purposes; but Section 9171 forbids granting an exclusive right to any company.

The court is of the opinion, taking these sections together and construing them in a reasonable manner, that the provisions of these sections under the above chapter contemplate that the consent of the municipal authorities shall be exercised in a reasonable and not in an arbitrary manner, and that for a failure to exercise their power in a reasonable manner a court of competent jurisdiction has the power to require the municipal authorities to give consent, to any company having the right to furnish light to consumers, to the use of the street, prescribing only reasonable restrictions in the use thereof and requiring that any damage or injury done to the highway by reason of the installation of the conduits and wires shall be restored and that any injurious consequences resulting from the installation of conduits and wires shall be remedied and made good to the public and the private owners.

It is also manifest from a reading of the statutes that the power and authority to use the highways of a municipality for electric light purposes is conferred by the state and not the municipality, under the sections above referred to.

This conclusion was reached by the Supreme Court in the following cases:  *Zanesville* v. *Tel Co.*, 64 Ohio St., 67; *Farmer* v. *Columbus Tel. Co.*, 72 Ohio St., 526; *Queen City Tel. Co.* v. *Cinti.*, 75 Ohio St., 64.

The power vested in the municipality is only to prescribe the manner and mode of using the highways, and this power the court holds must be exercised reasonably and not arbitrarily. See *McQuillan on Municipal Corporations*, Sections 728, 738, also Sections 378, 729 and 1632.

It appears from the pleadings and admitted facts in this case that the council of the city of Cincinnati has passed a general ordinance providing in general terms the conditions and regulations under which those in the business of furnishing electricity within the limits of the corporation may use the streets and public highways of the municipality. This ordinance is known as No. 2585 and was carried into the codification of the ordinances of the city of Cincinnati in 1911, and appears as Section 647,

page 265, of said ordinances of the city of Cincinnati as codified by authority of the council of the city of Cincinnati.

A reference to this ordinance, which was offered in evidence, will disclose that whenever permission is by ordinance granted to any person, partnership or corporation to engage in the business of electrical illumination it shall be under the following express terms and conditions. The ordinance then provides in great detail what must be done by the individual, partnership or corporation in order to occupy the streets, lanes, alleys and highways.

It would appear, therefore, that the council of the city of Cincinnati has practically provided everything that is necessary for any company, which is authorized to carry on this business, to do in order to occupy the streets or any part thereof.

The court is of the opinion, however, that the express consent of the proper city authorities should be secured, if possible, before undertaking to lay conduits or wires in any of the public ways of the municipality. If the council should unreasonably refuse to grant the permission, the court is of the opinion that proper action may be taken either by mandamus or mandatory injunction to require the proper authorities to grant the consent to the company, authorized to do business by the state, to lay conduits and wires under reasonable restrictions and conditions, or in accordance with the provisions of the ordinance which the city council has already passed. If the city authorities may refuse this permit, then manifestly it lies in the power of the city authorities to grant an exclusive right to some one company to furnish light to the consumers in the municipality.

In the opinion of the court it was never contemplated that a monopoly of the lighting business for commercial purposes should be given to any one individual, partnership or corporation. This is not a case of public lighting or the lighting of public highways. There is no doubt that the municipality itself may make provisions for lighting the public ways by erecting its own plant and furnishing its own light, or it may contract with a company authorized to do lighting in accordance with the provisions of the statute. But in the case of private commercial lighting, as the court has said, the statutes do not contemplate that an exclusive right shall be given to any individual, partner-

ship or corporation. See Section 9171, G. C., and authorities there cited.

In this case at the time the injunction suit was filed no special consent had been granted to the defendant company by the city authorities, nor had any request been made of the city authorities to grant permission to lay the conduits and wires in the streets named, and therefore the defendant company was not in a position to resist the city's claim that it had no authority to lay its conduits and wires, unless it be that no such consent was necessary because of the ordinance referred to, No. 2585, Section 647.

Since this action was brought the court gave the plaintiff and the defendant company an opportunity to agree upon the mode and manner of using the streets and alleys mentioned in the petition, but the city authorities have refused at this time to negotiate with the defendant company, and the question now is, whether or not this court shall enjoin the further use of the streets and alleys named by the defendant company and require the defendant company to secure the permit of the city authorities for the use of the streets and alleys.

In view of the fact that the city council, under Section 647 of the ordinance above referred to, appears to have made ample provision for the safeguard of the streets and alleys of the city against any injuries that may result from the laying of conduits and wires or the erection of poles or other appliances by an electric lighting company, and inasmuch as it appears that nothing need be done by the city authorities to enable the defendant company to lay its conduits and wires except to give the bare permission so to do, and in further view of the fact that the Union Gas & Electric Company, according to the pleadings and the admitted facts, has entered upon streets and alleys by the bare consent of the city and laid its conduits and wires in accordance with the provisions of Section 647 of the ordinance above referred to, and in further view of the fact that there has been no injury whatever done to the streets and alleys mentioned in the petition, the conduits and wires being nineteen feet or more below the surface and not interfering with any of the utilities in said streets or alleys, and in further view of the fact that the public interest requires that there be competition in the matter of furnishing electricity in order that the consumers may

secure the benefit of the lowest price possible for the use of electricity and in view of the fact that monopolies are abhorrent to the public generally except where the monoply is under the control and direction and perhaps the ownership of the public itself, this court is not disposed to strain a point as a chancellor sitting in a court of equity to enjoin the doing of a thing which results in no injury to the city of Cincinnati, but the doing of which apparently results in a benefit to the citizens using electricity, and in further view of the fact that this action would not have been brought except upon the request of a rival concern furnishing electricity, an injunction in this case should not be granted.

But if there is any doubt as to the soundness of this conclusion, then the court is cited to two authorities in support of the contention of the defendant that the consent of the city is not necessary in a case of this kind. Both of these authorities are by our own circuit court and will be referred to hereafter in this opinion.

In the case of *Callen* v. *The Columbus Edison Electric Light Co.*, 66 Ohio St., 166, the court defines the rights of abutting property owners on a street in this language, in the second paragraph of the syllabus:

"An owner of a lot abutting on such street has a property interest in the street in front of his lot which can not be taken against his will except upon the terms provided by the Constitution, viz: that a compensation shall first be made in money." Citing several Ohio authorities which are approved and followed.

Judge Spear, in announcing the opinion of the court, employs this language on page 172:

"The determination of the rights of the parties in this case involves an inquiry respecting the interest which the owner of land abutting on the streets of a municipality has in those streets. As to the country highways it seems to be settled in this state that while the public has the right of improvement and uninterrupted travel, the abutting owner has the right to all uses of the land not inconsistent with this right of travel and improvement."

And on page 173 he employs this language:

"It seems plain that the effect of the provision (of statute) is not to vest in the municipality a fee simple absolute in the

streets,. but only a determinable or qualified fee, and what is granted to the city is to be held in trust for the uses intended, viz.: for street uses, and street uses only."

In short, it appears to be the law of this state that an abutting owner upon a street of a municipality or a highway in the country has a right to use the streets and highways for any purpose he may deem proper not inconsistent with the use of it as a street. He has the right of egress and ingress. He may lay water mains or electric light conduits and wires provided he does not interfere with the use of the street as a street, and he may grant the right to connect his property with the property on the opposite side of the street to any person, partnership or corporation desiring to make the connection provided it is done without affecting the rights of the municipality in the street.

We think this proposition of law is not only sound, but has been repeatedly asserted by the Supreme Court in numerous cases. See *Daily* v. *State,* 51 Ohio St., 348; *Schaaf* v. *C., M. & S. Railway Co.,* 66 Ohio St., 215; *Traction Company* v.*Parish,* 67 Ohio St., 181.

The court is of the opinion that giving full force and effect to Section 9195, which requires the consent of the municipal authorities under reasonable regulations to construct lines for conducting electricity for light and power purposes through the streets, alleys, lanes, squares and public places of such city or village, by the erection of the necessary fixtures, including posts, piers and abutments necessary for the wires, and the provisions of Section 9197 of the General Code, which requires the consent of the municipality to construct and maintain underground wires and pipes or conduits, and the provisions of Section 9193, which require the consent of the municipal authorities to place, string, construct or maintain a line, wire, fixture or appliance of any kind to conduct electricity for lighting, heating or power purposes through a street, alley, lane, square, place, etc., and which section extends the inhibition without the consent of the municipality to all levels above or below the surface of such public ways, grounds, or places, as well as along their surfaces, means that where there will be any interference with the right of the municipality in the streets it is necessary

to secure the consent of the proper municipal authorities before the work can be done.

The two cases referred to as decided by the circuit court of this county are:

*Henry* v. *City of Cincinnati,* 1 C.C.(N.S.), 289.

In this case, which was decided by Judges Sibley, Russell and Cherrington, sitting in the Circuit Court of Hamilton County to determine the case, on account of the absence of the duly elected judges of this circuit, an action was brought in chancery seeking to enjoin Mrs. Henry, trustee, as the owner of certain real estate in the city of Cincinnati, from stringing a wire from her property across the street to a neighbor's property within the same block, at a height of about eighty feet above the surface of the street. The city showed that no consent was given by the proper authorities for the stringing of this wire to carry electricity from the Henry property to a neighbor's property across the street. But the court held that the consent of the city was not necessary, that it was only necessary to secure the consent of the abutting property owners, Mrs. Henry and the person who owned the property opposite hers. The court on page 290 says:

"The sole contention on which the case is made to turn, is, that no right to do this has ever been granted by the ordinance of council. It is agreed the regulation of the use by plaintiffs are rather in harmony with the requirements of the city in that regard, and it at last resolves itself into the question whether they can make this use in the two features specified without the permission of the council. That resolves itself finally into what is the property right of a citizen under such circumstances in a city like this."

The court in that case expresses doubt as to whether or not the sections under consideration, 9193 and 9198, General Code, at that time Section 3471a, Revised Statutes, were intended to apply to a case where a conduit or wire was to be put across the street instead of through the street lengthwise, the language in the statute being an inhibition to place wires or conduits through the street, and the court in that case appeared to believe that stringing a wire across the street was not putting it through the street. But the court did not allow its decision to rest upon this

ground. It refers to the sections now under consideration in this case (Sections 9193 and 9198, General Code) but at that time Section 3471a, Revised Statutes. The court uses this language on page 291:

"Prior to going into the two points that I wish to state shortly, a statute passed in 1896 is cited with reference to such cases, and some one interested procured an amendment to Section 3471, designated as 3471a, which provides, that in order to subject the crossing of lots and alleys by persons in the way that is set out in this petition, through their own private arrangements to subject the same to municipal control, no person or company shall place, string, construct and maintain any line, wire, fixture, or appliance of any kind for conducting electricity for lighting, heating or power purposes, through any street, alley lane, square, place or land of any city, village or town, without the consent of such municipality, and this inhibition shall extend to all levels, above and below the levels of such public way, as well as along the surface thereof."

The court then takes up a discussion of what is a street and what are the rights and authority of the municipality and abutting property owner in and to the street and the soil beneath the surface and the space above the surface of the street. And on page 293 the court says:

"I don't find anything, any authorities, except general propositions that are in the books, that aside from what is necessary to the city's use of the streets, not only for actual occupancy, but for regulative control, indicating the private owner has no rights; he may dig his hole underneath the street, and as we think he may make his use above it if he sees fit until you reach the line of the limit of use, or if it is still within the city's control as to the mode of use."

And on page 294 the court further says:

"But the city seeks to have a right to monopolize this use, to absolutely deny it to the private owner. That is the real point in contention. Now, what we think is, that the private owner may use the street in any way that is permissible by the ordinances of the city, so far as the mode of the use is concerned. where is it utterly impossible that it shall contravene any right of the city in its actual occupation and use. Now, that is the case here, and there is not anything in the authorities that perhaps exactly touch it. Only on general principles we have resolved it. We place it upon the ground that the property owner has a

right to use it in any way that does not contravene the city's use, and that conforms with its regulative control as to the mode of use. Upon that point there is no dispute between us. It is not worth while to prolong the discussion. It is not worth while for us to go into hair splitting distinctions on the authorities in the books. * * * We think the decree of the court below substantially gives the relief to which the plaintiff is entitled, and that decree may be entered in this court."

In other words, in that case, the circuit court of this county, in 1898, refused to enjoin the private owner from maintaining a wire over the street, which had been placed there without the consent of the city, upon the broad ground that the consent was not necessary where there was no interference with the city's use of the street.

The second case which was decided by the circuit court of this county, by a divided court, is that of *Butler* v. *City of Cincinnati*, 2 C.C.(N.S.), 376.

The syllabus of a circuit court decision is no part of the law and therefore we can not always accept the statement contained in the syllabus as the law of the case in a circuit court decision. In that case Judges Giffen and Jelke were unable to agree on a case very similar to the one at bar and Judge Swing, who did not sit in the case or hear it, was asked to come in and participate in the decision. The question was submitted to him as to whether or not he would agree with Judge Giffen or Judge Jelke. Judge Swing briefly stated that he was of the opinion that the Revised Statutes, Section 3471a, controlled and sided with Judge Jelke. The case was one in which the Butler estate had placed a conduit across an alley, at a depth of nineteen feet below the surface, the exact distance which the conduits in the case at bar are placed, and through this conduit wires were placed for the transmission of electric light from Butler's property to other property on the opposite side of the al'ey. The city undertook to sever the wires and remove them from the alley and Butler brought suit to enjoin the same. Judge Giffen was of the opinion that the injunction should be allowed. Judge Jelke was of the opinion that it should not be allowed, and Judge Swing, as stated before, sided with Judge Jelke. In deciding this case Judge Giffen, on pages 377 and 378, said:

"It is averred in the petition and not denied in the answer—

" 'That said wires are many feet below all water and gas pipes and all sewers and conduits which have been laid or will here-after be laid in said alley. That said wires have been main-tained under said alley for more than two years; that the main-tenance of said wires in such place and at the great depth of nineteen feet has in no way interfered with the use of said alley by the. public or by the city of' Cincinnati; that the continued maintenance of said wires at such depth can not at any time in-terfere with the use of said alley by the .public or by the city or its board of 'public service or its successors, or any agent or offi-cer of said city, for any municipal purposes or use whatever.'

"This being true, the plaintiffs, by maintaining the wires, are infringing upon no right of the city or of the public; but are ex-ercising a right incident to their easement of ingress and egress."

And again he says on page 378:

"Every individual's property is subject to proper and rea-sonable police regulations, as was attempted by Section 3471a, Revised Statutes; but applied to the facts admitted by the plead-ings in this case the inhibition of the statute is not only unrea-sonable, but, without· just cause, deprives the abutting owner of land of a substantial property right."

Judge Jelke in his opinion in this case refused to follow the case above cited of *Henry* v. *City of Cincinnati* and refused to concur with the reasoning of the court in that case. Judge Jelke was of the opinion that the city of Cincinnati had a base or quali-fied fee to the street and that there can be no interference with the streets except by the consent of the city. He bases this opin-ion upon the decision in the case of *Callen* v. *Electric Light Com-pany*, 66 Ohio St., 173, and *Traction Company* v. *Parish*, 67 Ohio St., 190. He says on page 379 of the case which he is deciding:

"So long as the city maintains the purposes for which it is vested with title, this estate is a fee and as such co-extensive with a fee title in any owner of any other property."

In view of the conflicting authorities of our own circuit court, this court is of the opinion that the first case, the Henry case, de-cided by a unanimous bench against the contention of the plaint-iff in this case, is entitled to greater weight than the decision in the Butler case, 2 C.C.(N.S.), 376, which was decided by a di-

vided court. Each of these decisions is entitled to great weight by the court of common pleas of this county and each of them ought to be binding upon this court if they were not in conflict; but where the questions involved are identically the same and there is a contrariety of opinion as to what is the law, this court feels that it is at liberty to follow the decision of either, and believing that the decision in the Henry case is founded upon better reasoning and sounder principles of law and is further supported by the opinion of Judge Giffen in the second case cited, whose reasoning appeals also to this court, the court is disposed to follow the decision in the Henry case and does hold that the plaintiff, the city of Cincinnati, has not, upon the pleadings and the admitted facts in this case, shown good grounds for the issuance of a perpetual injunction in this case.

The temporary restraining order heretofore issued herein will be dissolved and the plaintiff's petition will be dismissed at the costs of the plaintiff. If it should be adjudged necessary to secure the naked consent of the city authorities to further lay conduits and wires across the streets or alleys of the city by the defendant company, the court is of the opinion that a refusal to give the consent may be enforced by proceedings in mandamus against the proper city authorities or by mandatory injunction to require the consent to be given to lay the conduits and wires in accordance with the terms and provisions of the city ordinance heretofore referred to under Section 647.

For the present it is only necessary to hold that the plaintiff is not entitled to the relief prayed for and that the petition should be dismissed and the temporary restraining order heretofore issued herein dissolved.